THE STATE, EX REL. HEPPERLA, *v.* GLANDER, TAX COMMR., ET AL.

(No. 4097—Decided January 6, 1949.)

*Mr. Meyer A. Cook, Messrs. Davis & Young, Mr. Isadore Topper* and *Mr. Leonard Stern,* for relator.

*Mr. Hugh S. Jenkins* and *Mr. C. William O'Neill,* attorneys general, and *Mr. J. Ralston Werum,* for respondents Tax Commissioner and Board of Tax Appeals.

*Mr. Frank T. Cullitan,* prosecuting attorney, and *Mr. A. M. Braun,* for respondent Zangerle, auditor.

*Mr. Lee C. Howley* and *Mr. Joseph H. Crowley,* directors of law, and *Mr. Robert M. Morgan,* for respondent city of Cleveland.

*Per Curiam.*  This matter is submitted on motion of respondent John A. Zangerle, auditor of Cuyahoga county, to quash service of summons for the reason that respondent Zangerle is a resident and officer of Cuyahoga county, Ohio, and that this action is not properly brought against him in Franklin county.

Two grounds are assigned to support the motion, namely, that the action against the moving respondent must be brought against him in the county in which he resides and not in Franklin county, by reason of Section 11271, General Code; and, that the petition does not aver and the law does not require such joint duties and obligations on the part of the respondents in listing, levying and assessing taxes on the property described as will permit their joinder as parties respondent.

The respondent city of Cleveland has, by counsel, entered its appearance, so that the sole question raised by the motion relates to the validity of the joinder of respondent Zangerle, as auditor, with the other respondents.

We are of opinion that the motion must be sustained on both grounds asserted. The averments of the petition constitute a charge that the respondent auditor has failed and neglected to perform his official duties in levying and assessing taxes on real estate owned by respondent city and located in the county of Cuyahoga. This subject matter makes applicable the provision of Section 11271, General Code, which reads:

"Actions for the following causes must be brought in the county where the cause of action or part thereof arose:

"* * *

"(2) Against a public officer, for an act done by him in virtue or under color of his office, or for neglect of his official duty."

If the relator is entitled to the relief prayed for in the second amended petition, it may be granted by a several order on the respondent Zangerle, as auditor of Cuyahoga county, and on the other respondents, either severally or jointly.

The official obligation of respondent Zangerle can be related only to real estate owned by the respondent

city of Cleveland, which is not included in that real estate which, though ascertained and assessed by the respondent Tax Commission under Section 5423, General Code, is not used by the city of Cleveland in the operation of a public utility or as incidental to its operation. Section 5548, General Code. The auditor's. official duty is therefore specific and does not require the joint action of any of the other respondents. Likewise, the ascertainment and assessment of the other assets of the city of Cleveland set out in the amended petition, if taxable, are incumbent upon the respondents other than Zangerle, auditor. Sections 5423, 1464-2, 1464-3, 5376, 5377, 5378 and 5570-1, General Code; *State, ex rel. Methodist Book Concern,* v. *Guckenberger, Auditor,* 133 Ohio St., 27, 10 N. E. (2d), 1001.

The motion is sustained.

*Motion sustained.*

WISEMAN, P. J., MILLER and HORNBECK, JJ., concur.

(Decided October 24, 1952.)

IN MANDAMUS.

WISEMAN, J. In 1946, relator, Carlton H. Hepperla, instituted in this court his action for a writ of mandamus. After several amendments, relator filed his second amended petition in 1948, alleging that he is a citizen and a resident and taxpayer of the state of Ohio. Those named as defendants were C. Emory Glander, the then Tax Commissioner of Ohio; the city of Cleveland; the members of the Board of Tax Appeals; and the auditor of Cuyahoga county.

In his second amended petition, relator prayed that a writ of mandamus be issued commanding the respondents to assess and levy taxes on all the real prop-

erty described in the first cause of action, to wit, the Highland Park Golf Course, the Seneca Golf Course, the Cleveland Municipal Stadium, the Cleveland Municipal Airport, the Public Auditorium, the Public Markets, the Cleveland Municipal Water Works, and the Cleveland Municipal Light Plant; and to assess and levy taxes on all the personal property owned and operated by the city of Cleveland and used in conjunction with the operation and functions of the above-named businesses.

In 1949, a motion to quash the service of summons on the auditor of Cuyahoga county was sustained on the ground that in such action the auditor of Cuyahoga county could not be required to answer in an action instituted in Franklin county, and that the petition did not allege facts showing a failure to perform a duty resting on the auditor and the other respondents jointly. The remaining respondents filed answers, and a reply was filed by relator. The facts have been stipulated.

Since the institution of this action, the auditor of Cuyahoga county has placed on the 1948 tax duplicate certain property owned by the city of Cleveland, including the Cleveland Municipal Stadium and parking areas. A complaint was filed with the Board of Tax Appeals, to test the taxability of this property. The board held certain property to be exempt, but restored to the tax duplicate the Cleveland Municipal Stadium, the ground upon which it stands, and certain lands used for parking purposes. Exemption of those parcels was denied on the ground that they were not "public property used exclusively for any public purpose." An appeal was taken to the Supreme Court where the decision of the Board of Tax Appeals was affirmed. *City of Cleveland* v. *Board of Tax Appeals* (1950), 153 Ohio St., 97, 91 N. E. (2d), 480. Thus, the

question relative to the Cleveland Municipal Stadium has been decided and we consider that question withdrawn from this case.

The basic problem presented is whether the property involved as used in the operations named is properly exempt from taxation under Section 2, Article XII of the Ohio Constitution, and the statutes enacted thereunder. The question presented here is similar to the question presented to the Supreme Court in *City of Cleveland* v. *Board of Tax Appeals, supra.* However, in that case the statutory procedural steps were taken to determine whether the Cleveland Municipal Stadium and other property owned by the city of Cleveland should be placed on the tax duplicate or whether such property was exempt. In the instant case, these statutory procedural steps have not been taken. This is an action in mandamus against the Tax Commissioner, the Board of Tax Appeals, and the city of Cleveland, in which relator prays that a writ issue against respondents Tax Commissioner and Board of Tax Appeals requiring them to assess and levy taxes on all real property involved, and against the city of Cleveland requiring it to list and return, for purpose of taxation, all the personal property owned and used by the city of Cleveland in the conduct of the operations named.

Immediately we are confronted with a jurisdictional question. The Tax Commissioner and the Board of Tax Appeals contend that the court is without jurisdiction because (a) the relator has an adequate remedy at law, and (b) the facts in this case do not disclose a clear duty enjoined by law, the performance of which is sought in this action. The Attorney General presents the discussion on this question under two headings, first, in regard to real property, and, second, in regard to personal property.

The statute expressly provides that mandamus will not lie except to command the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station. Section 12283, General Code.

By Section 1464, General Code, all powers and duties formerly performed by the Tax Commission are imposed on the Tax Commissioner and Board of Tax Appeals, and are assigned to them by the act creating the Department of Taxation. See *Zangerle, Auditor, v. Evatt, Tax Commr.,* 139 Ohio St., 563, 571, 41 N. E. (2d), 369. Under Section 5579, General Code, as amended effective October 25, 1949 (123 Ohio Laws, 779), all powers and duties with respect to real property are imposed on the Board of Tax Appeals. Sections 1464-1 and 1464-2, General Code, enumerate the powers and duties of the Board of Tax Appeals. Under Section 1464-3, General Code, all other powers and duties, other than those mentioned in Sections 1464-1 and 1464-2, General Code, are assigned to the Tax Commissioner. The Tax Commissioner and the Board of Tax Appeals are assigned separate duties neither one of which is concerned with the duties or responsibilities of the other, with the exception that the Board of Tax Appeals is given power to review the orders of the Tax Commissioner. Subdivision 5 of Section 1464-1 and Section 1464-4, General Code; *Zangerle, Auditor,* v. *Evatt, Tax Commr., supra,* page 571. The duties of the county auditor in listing property, both real and personal, for taxation, are set forth in Sections 2583 and 2587-1, General Code. The county auditor acts under the direction of the Board of Tax Appeals with respect to real property and under the Tax Commissioner with respect to personal property in the performance of certain duties. The Tax Commissioner has no duties or responsibilities with

respect to real property, and particularly with respect to the exemption of real property, the question involved in this case.

With respect to the authority of the Board of Tax Appeals, the respondents contend that relator has an adequate remedy at law. Under Section 5616, General Code, any person who is authorized to file complaint before the County Board of Revision may complain to the Tax Commission, the receipt of which complaint and hearing thereon is now a function of the Board of Tax Appeals. The complaint is heard and the finding is certified to the county auditor. A complaint may be filed by any taxpayer as to the valuation of his own or another's real property. Section 5609, General Code. Under this procedure the authority of the Board of Tax Appeals is exclusive. *State, ex rel. Toledo Trust Co.,* v. *Fox et al., County Bd. of Revision,* 39 Ohio App., 465, 177 N. E., 652; Section 5616, General Code. Where there is an adequate remedy at law, mandamus will not lie. Section 12287, General Code. See *State, ex rel. Hile, a Taxpayer,* v. *Zangerle, Auditor,* 132 Ohio St., 523, 9 N. E. (2d), 292; *State, ex rel. Methodist Book Concern,* v. *Guckenberger, Auditor,* 133 Ohio St., 373, 14 N. E. (2d), 9.

Mandamus does not lie against the Tax Commissioner with respect to real property for the reason that he has no legal responsibility in regard thereto, and mandamus does not lie against the Board of Tax Appeals for the reason that relator has an adequate remedy at law.

With respect to personal property, the Board of Tax Appeals has no responsibility whatsoever, except to review the orders of the Tax Commissioner. Section 5611, General Code. There is no duty enjoined by law upon the Board of Tax Appeals with respect to personal property under the facts in this case and,

therefore, mandamus does not lie against the board.

There are duties resting on the Tax Commissioner with respect to personal property, but it is contended by the respondents that the relator has an adequate remedy at law. Under Section 5616, General Code, complaint could be filed with the Tax Commission, this function now being performed by the Tax Commissioner, with respect to exemption of personal property. However, under similar facts, the Supreme Court in *State, ex rel. Hile, a Taxpayer,* v. *Zangerle, Auditor, supra,* held that the taxpayer had an adequate remedy at law under Section 5616, General Code, and related sections. This relator could have filed a complaint with the Tax Commissioner with respect to the personal property. The decision of the Tax Commissioner could be reviewed by the Board of Tax Appeals. Section 5611, General Code. From the decision of the Board of Tax Appeals an appeal could be taken to the Supreme Court. This, the relator did not do. The relator had an adequate remedy at law and mandamus does not lie against the Tax Commissioner with respect to the personal property involved.

In our opinion, in this class of cases, the failure of relator to make demand on the respondents would not deprive him of his right to maintain an action. "Where the duty sought to be enforced is one owing to the public generally," demand is not a necessary prerequisite to the institution of a mandamus action. 25 Ohio Jurisprudence, 1001, 1002, Section 27. In this class of cases the law itself stands in lieu of such demand. 58 A. L. R., 123.

The action will be dismissed as against the Tax Commissioner and the Board of Tax Appeals.

The action against the city of Cleveland involves only personal property. No objection has been raised by the city of Cleveland to being sued in Franklin

county rather than in Cuyahoga county. To the second amended petition of relator, the city of Cleveland has filed an answer.

In the second amended petition, relator alleged that the city of Cleveland "owns personal property in the form of machinery, equipment, transmission facilities and other personal property used in the operation of the following proprietary functions: The Cleveland Municipal Airport, The Highland Park Golf Course, The Seneca Golf Course, The Public Markets, The Municipal Water Works, The Municipal Light Plant, The Public Auditorium, and The Municipal Stadium; that the said city of Cleveland has refused and does refuse, through its officers and officials, to list and return to the Tax Commissioner of the State of Ohio, for purpose of taxation, all the personal property owned or operated by the said city of Cleveland and used in the operation of the above mentioned proprietary functions."

In its answer, the city of Cleveland alleges that with respect to the real property, all such real property, except part of the airport lands, had been listed as exempt by the county auditor and reported as exempt to the state taxing authorities; that at no time has the city made any return, nor has any taxing official requested a return by it of any personal property of the city used in the operation of the aforesaid properties.

Counsel have filed voluminous briefs in which they have discussed the issues presented, including the question as to whether the operations of the city of Cleveland herein involved fall within the category of governmental or proprietary functions of the city, and also the question as to whether or not such operations involve public property used exclusively for public purposes. We deem it necessary to refer to only a

few of the numerous authorities cited by counsel in their briefs, which bear upon the questions presented.

The pertinent part of Section 2, Article XII of the Ohio Constitution, provides:

"Land and improvements thereon shall be taxed by uniform rule according to value * * * and without limiting the general power, subject to the provisions of Article I of this Constitution, to determine the subjects and methods of taxation or exemptions therefrom, general laws may be passed to exempt burying grounds, public school houses, houses used exclusively for public worship, institutions used exclusively for charitable purposes, *and public property used exclusively for any public purpose* * * *." (Emphasis ours.)

At the time this action was instituted Section 5351, General Code (120 Ohio Laws, 407), in part provided:

"Real or personal property belonging exclusively to the state or United States, *and public property used for a public purpose, shall be exempt from taxation.*" (Emphasis ours.)

An amendment to this section became effective September 7, 1951 (124 Ohio Laws, 379), and it now provides:

"Real or personal property belonging to the state or United States used exclusively for a public purpose *and public property used exclusively for a public purpose, shall be exempt from taxation.*" (Emphasis ours.)

At the time this action was instituted, Section 5356, General Code (108 Ohio Laws, pt. 2, 1285 [an amendment effective October 6, 1949, 123 Ohio Laws, 455, is not pertinent]), provided:

"Market houses, public squares, or other public grounds of a city, village or township, houses or halls used exclusively for public purposes or erected by

taxation for such purposes, notwithstanding that parts thereof may be lawfully leased * * * shall be exempt from taxation.''

Section 5357, General Code, provides:

''Works, machinery, pipe-lines and fixtures belonging to a city or village and used exclusively for conveying water to it, or for heating or lighting it, shall be exempt from taxation.''

It has been held that the provisions of these sections can be no broader than the constitutional provisions under which they were enacted. Hence, Section 5351, General Code, as it existed at the time this suit was filed must be interpreted to exempt public property only when it is used *exclusively* for a public purpose. *City of Cleveland* v. *Board of Tax Appeals, supra; Zangerle, Auditor,* v. *City of Cleveland,* 145 Ohio St., 347, 61 N. E. (2d), 720; *City of Toledo* v. *Jenkins et al., Board of Tax Appeals,* 143 Ohio St., 141, 54 N. E. (2d), 656; *Columbus Metropolitan Housing Authority* v. *Thatcher, Auditor,* 140 Ohio St., 38, 42 N. E. (2d), 437.

In *Toledo* v. *Jenkins, supra,* on page 151, the court said:

''Section 5351, General Code (110 Ohio Laws, 78), provided, *inter alia,* that 'public property used for a public purpose shall be exempt from taxation.'

''Section 5351 controls but its language must be read in the light of the language of the Constitution. The test, then, is whether the realty was public property used during the year involved exclusively for a public purpose.

''Underlying that test are three essential prerequisites. (1) The realty must be public property; (2) the use must be for a public purpose; and (3) the use must be exclusively for that purpose.''

In the application of this test, the court in that case exempted from taxation the Toledo Airport. The

fourth, fifth and sixth paragraphs of the syllabus are as follows:

"4. In general the real property of a municipal corporation, constituting part of its wholly owned and operated public airport, is public property within the meaning of the Constitution and statute.

"5. All the real estate necessary and incidental to the operation of such an airport and used therein is devoted to a public use.

"6. *The fact that revenue is incidentally derived from public property does not in and of itself alter the public character of the use.*" (Emphasis ours.)

In *Zangerle, Auditor,* v. *City of Cleveland, supra,* the court held that a municipal corporation is engaged in a proprietary function in owning and operating a transportation system and that the city of Cleveland was not entitled to hold such property exempt from taxation. The fourth, fifth and seventh paragraphs of the syllabus are as follows:

"4. The General Assembly has constitutional authority to exempt from taxation municipally owned real property used in the performance of a public or governmental function; but lacks constitutional authority to exempt from taxation municipally owned real property used in carrying on a private or *proprietary function primarily for profit.*

"5. A municipal corporation, by entering a field of private competitive business for profit, divests itself of its sovereignty *pro tanto,* takes on the character of a private corporation and thereby forfeits its immunity from taxation.

"7. Personal property used in carrying on a municipally owned *private competitive business for profit* is not exempt from taxation under the provisions of Sections 5351 or 5356, General Code." (Emphasis ours.)

In *City of Cleveland* v. *Board of Tax Appeals, supra,* the court held that the Cleveland Municipal Stadium was taxable. The third, fourth, fifth and sixth paragraphs of the syllabus are as follows:

"3. A use of public property for any public purpose, to warrant exemption from taxation, *must be an exclusive use by the public, open to all the people on a basis of equality to such extent as the capacity of the property admits, or an exclusive use by some public or quasi-public agency on behalf of the public.*

"4. The phrase, 'public property used exclusively for any public purpose,' does not mean used merely for a public benefit, and a showing that some public purpose may be served by the use of the premises is not sufficient to constitute an exclusive public use.

"5. The provisions of Section 2, Article XII of the state Constitution, do not authorize the General Assembly to exempt from taxation municipally owned real property used in carrying on a private or proprietary function in competition with others engaged privately in similar enterprises.

"6. Municipally owned property is not 'used exclusively for any public purpose,' within the limitation of Section 2 of Article XII of the state Constitution, where the municipality constructs a stadium designed to accommodate large crowds at athletic and other exhibitions and acquires in connection therewith large areas of vacant land which it devotes to automobile parking, *and rents such publicly owned facilities to private persons for their use and profit, receiving therefor substantial sums of money and a stipulated share of the profits from sales by concessionaires.*" (Emphasis ours.)

In the latter case, the fact that a profit was made was an important factor. The test to be applied in determining whether a given operation is exclusively for a public purpose is not too well established. In every

case we must consider the factual situation. In the instant case, we find the profit motive absent; neither are any of the other factors present on which the court usually relies in holding public property taxable. In the case at bar, all the operations are for the public benefit and conducted in furtherance of a public purpose. On the basis of the facts presented and applying the tests which have been established and the principles of law announced in the cases above cited, we find that the property involved in this suit was used exclusively for a public purpose and, therefore, was exempt from taxation.

On the issue joined between the relator and the city of Cleveland we find for the respondent.

*Judgment accordingly.*

HORNBECK, P. J., and MILLER, J., concur.