**The STATE ex rel. DIXON**

**v.**

**CLARK COUNTY COURT OF COMMON PLEAS, JUVENILE DIVISION.**

[Cite as *State ex rel. Dixon v. Clark Cty. Court of Common Pleas, Juv. Div.* (1995), 103 Ohio App.3d 523.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 94–CA0079.

Decided May 17, 1995.

*Robert D. Goelz,* for relator.

*Thomas E. Trempe,* Assistant Clark County Prosecuting Attorney, for respondent.

BROGAN, Judge.

In this original action, the relator, Regina K. Dixon, seeks a writ of prohibition to prevent the Court of Common Pleas of Clark County, Juvenile Division,

respondent herein, from exercising jurisdiction in a parentage case. Dixon alleges that the court lacks subject matter jurisdiction because the putative father failed to comply with the provisions of R.C. 3111.22 prior to bringing the action in juvenile court. Dixon claims that participation in an administrative determination of parentage is a necessary jurisdictional prerequisite to a juvenile court's exercise of authority in a parentage action filed pursuant to R.C. 3111.01 to 3111.19.

The relevant facts and posture of this case follow. Dixon filed for an administrative determination of parentage with the Clark County Child Support Enforcement Agency ("CSEA") on June 15, 1993. Dixon sought the establishment of a parent-child relationship between her minor child, Ciara Michelle Miller, and the alleged father, Rodney E. Miller. The CSEA notified the parties that it would hold a hearing on October 28, 1993. Ten days before the hearing, Rodney Miller filed a parentage complaint in juvenile court for the purpose of securing visitation rights with Ciara, whom he acknowledged as his daughter. Miller did not appear at the administrative hearing. Subsequently, the CSEA apparently prepared an order finding that Miller failed to appear without a showing of good cause, but did not send copies of the notice to the parties.

On December 17, 1993, Dixon filed her answer in juvenile court. She admitted all of the allegations contained in the complaint, prayed for a determination of parentage and all other "just and equitable" relief. Accompanying her answer was a motion in which she requested, *inter alia*, temporary custody during pendency of the action, and child support. The court directed the matter to a referee. On March 3, 1994, the court adopted the referee's report and recommendation which found Dixon to be the father, and established a visitation schedule and child support. Dixon entered her objections to the referee's report on March 17, and the court ordered the matter returned to the referee for further consideration. The court set a hearing for August 4.

On August 1, 1994, Dixon filed a motion to dismiss. She claimed that the court lacked the subject matter jurisdiction to hear the case and that the case had been heard by the referee without the benefit of a proper order of reference. Regarding the jurisdictional issue, she alleged that, because Miller did not participate in the CSEA hearing, the court could not then entertain his parentage action. In its decision and order of September 1, the court denied the motion to dismiss. The court held that (1) it properly exercised its authority in this case under its grant of original jurisdiction in R.C. 3111.06(A); (2) conflicts exist between R.C. 3111.04(D), 3111.06(A), and 3111.22(A); and (3) that the administrative process as contemplated by R.C. 3111.22 "was satisfied in this matter." The court further held that it had properly referred the case. The court reiterated its finding of paternity in the case, and subsequently held a hearing and issued an

entry to clarify some visitation matters. However, the issue of support is still pending.

Dixon filed this action on October 7, 1994. She seeks a permanent writ of prohibition and a temporary restraining order prohibiting the court from exercising jurisdiction over the parentage case. On October 25, we issued an order to show cause why the action should not be dismissed, it appearing that there was adequate remedy at law by way of appeal. Following the parties' responses, we determined to take the case on the jurisdictional question, but we found the reference issue to be without merit.

■ The extraordinary writ of prohibition is a preventive measure, rather than a corrective remedy, which "is designed to prevent a tribunal from proceeding in a matter which it is not authorized to hear and determine." *State ex rel. Stefanick v. Marietta Mun. Court* (1970), 21 Ohio St.2d 102, 104, 50 O.O.2d 265, 266, 255 N.E.2d 634, 635; *State ex rel. Ray v. Burns* (1963), 174 Ohio St. 543, 544, 23 O.O.2d 209, 209–210, 191 N.E.2d 153, 154. Because prohibition is "to be used with great caution in the furtherance of justice," *State ex rel. Stark v. Summit Cty. Court of Common Pleas* (1987), 31 Ohio St.3d 324, 325, 31 OBR 599, 599–600, 511 N.E.2d 115, 117, a relator must ordinarily satisfy a tripartite test to successfully state a claim. The relator must show that "(1) the court or officer against whom the writ is sought is about to exercise judicial or quasi-judicial power, (2) the exercise of such power is unauthorized by law, and (3) refusal of the writ will cause injury for which no adequate remedy in the ordinary cause of law exists." *State ex rel. Brookpark Entertainment, Inc. v. Cuyahoga Cty. Bd. of Elections* (1991), 60 Ohio St.3d 44, 45, 573 N.E.2d 596, 598–599; *State ex rel. Tilford v. Crush* (1988), 39 Ohio St.3d 174, 176, 529 N.E.2d 1245, 1246–1247. However, prohibition will lie even when an adequate legal remedy exists, "[w]here there is a total lack of jurisdiction on the part of a court[.]" *State ex rel. Adams v. Gusweiler* (1972), 30 Ohio St.2d 326, 59 O.O.2d 387, 285 N.E.2d 22, paragraph two of the syllabus.

It is without question that the trial court is about to exercise its authority in this case to determine the measure of child support, which satisfies the first element of the test for prohibition. However, because our decision regarding the third element is dispositive of this action, we do not address here whether the court's jurisdiction is unauthorized by law.

The third element requires us to ascertain whether there exists an adequate remedy at law for the relief that Dixon seeks, and if a remedy exists, whether there is "a patent and unambiguous lack of jurisdiction of the inferior court which clearly places the dispute outside the court's authority[,]" *Crush, supra,* 39 Ohio St.3d at 176, 529 N.E.2d at 1247, and properly before this court in prohibition. In this case, the adequate legal remedy before this court would be an appeal.

See Section 3(B)(2), Article IV, Ohio Constitution. Our appellate jurisdiction is limited to reviewing judgments and final orders. See *id.;* R.C. 2505.03(A). Civ.R. 54(A) describes a "judgment" as including "a decree and any order from which an appeal lies as provided in section 2505.02 of the Revised Code." R.C. 2505.02 defines a "final order" as "[a]n order that affects a substantial right in an action which in effect determines the action and prevents a judgment, [or] an order that affects a substantial right made in a special proceeding[.]" Therefore, if the judgment complained of below affects a substantial right and determines the cause, or if a parentage action is a special proceeding and the judgment affects a substantial right, then the relator has an adequate remedy at law and, generally, prohibition will not lie.

In 1993, the Ohio Supreme Court interpreted special proceedings under R.C. 2505.02. The court held in *Polikoff v. Adam* (1993), 67 Ohio St.3d 100, 616 N.E.2d 213, that "[o]rders that are entered in actions that were recognized at common law or in equity and were not specially created by statute are not orders entered in special proceedings pursuant to R.C. 2505.02." *Id.* at syllabus. The court subsequently ruled that juvenile court proceedings, "including parentage actions, are special statutory proceedings[.]" *State ex rel. Fowler v. Smith* (1994), 68 Ohio St.3d 357, 360, 626 N.E.2d 950, 953. Upon first glance, it would appear that a determination of parentage, without more, would affect a substantial right and that decision would be a final appealable order. However, that is not how the court viewed the issue.

In *Smith,* the relator was the defendant in a paternity action. Prior to trial, the parties reached a compromise settlement. However, the trial judge declined to continue the case to give the parties time to stipulate to a dismissal and heard the merits of the case. Following the trial, but before judgment, the parties filed their stipulation, but did so " 'pursuant to Civil Rule 41(A)(2),' " *id.* at 358, 626 N.E.2d at 951, which requires court approval before dismissal. The judge refused to dismiss, and filed an entry adjudicating the defendant the father of the child. Subsequently, defense counsel notified the court that the parties intended to file their stipulation pursuant to Civ.R. 41(A)(1)(b), which does not require court approval before dismissal. Nevertheless, the judge continued to exercise jurisdiction over the case. The relator filed claims in prohibition and mandamus, which the court of appeals denied.

█ The Supreme Court relied on the invited-error doctrine when it determined that the relator could not take advantage of his error when he informed the trial court that the stipulation was brought under Civ.R. 41(A)(2). But the court went on to say that "the juvenile court has never entered a final order in the paternity action—*apparently the issue of past child support remains pending*—and Civ.R. 41(A)(1)(b) allows a dismissal by stipulation at any time before

final judgment is rendered. * * * Therefore, appellant apprised the trial court of the parties' actual basis for dismissal in a timely fashion, i.e. prior to its entry of final judgment in the paternity action. * * * [W]e find that appellant timely asserted and did not waive a right to dismiss under Civ.R. 41(A)(1)(b)." (Emphasis added.) *Id.* at 359–360, 626 N.E.2d at 952–953, (citing McCormac, Ohio Civil Rules Practice [2 Ed.1992] 354, Section 13.05).

Ultimately, the court affirmed the court of appeals on other grounds. Therefore, while a parentage action is a special proceeding, a judgment which does not include a determination of support, where that issue is before the juvenile court, is not a final appealable order. See *id.; Kouns v. Pemberton* (1992), 84 Ohio App.3d 499, 501, 617 N.E.2d 701, 701–702; *Adams v. Jett* (Feb. 8, 1995), Montgomery App. No. 14636, unreported, 1995 WL 51060.

In the instant case, the court has yet to decide the issue of support. The relator did not counterclaim for support in her answer, although she did file an accompanying motion requesting support. We conclude, however, that the issue of support is properly before the court, because a judgment of parentage "may contain any other provision directed against the appropriate party to the proceeding, concerning the duty of support * * * or any other matter in the best interest of the child." R.C. 3111.13(C). Thus, the court's judgment in this case is not yet final.

 However, the legal remedy need not be ripe to be adequate. The future ability to appeal will suffice as an adequate legal remedy. See *State ex rel. Aycock v. Mowrey* (1989), 45 Ohio St.3d 347, 351, 544 N.E.2d 657, 661–662. Assuming there is no dismissal in this matter, the judgment will become final upon a determination of support, and Dixon may avail herself of the appellate process. Hence, we need not inquire, at this time, whether the court properly asserted subject matter jurisdiction. But our review is not yet complete; we must conclude "whether there is a patent and unambiguous restriction on the jurisdiction of an inferior court or a complete and total want of jurisdiction which clearly places the pertinent controversy outside the court's jurisdiction." *Id.* For the following reasons, we find that the relator has not shown that the court had no power whatsoever to assume jurisdiction.

In R.C. 3111.06(A), the General Assembly granted juvenile courts original jurisdiction over parentage actions brought pursuant to R.C. 3111.01 to 3111.19. A similar grant is provided in R.C. 2151.23(B)(2). R.C. 3111.22(A)(1) and (B), however, provide for an administrative determination of parentage as a precursor to judicial action:

"(A)(1) * * * no person may bring an action under sections 3111.01 to 3111.19 of the Revised Code before requesting an administrative determination of the

existence or nonexistence of a parent and child relationship from the child support enforcement agency of the county in which the child or the guardian or legal custodian of the child resides.

" * * *

"(B) Except as provided in division (A)(2) of this section, before a person brings an action pursuant to sections 3111.01 to 3111.19 of the Revised Code to determine the existence or nonexistence of a parent and child relationship, he shall request the child support enforcement agency of the county in which the child or the guardian or legal custodian of the child resides to determine the existence or nonexistence of a parent and child relationship between the alleged father and the child. * * * "

The statute goes on to provide for the event of a failure of the administrative process:

"[I]f either the mother or the natural father does not appear at the administrative hearing and does not show good cause why he or she did not appear at the administrative hearing, the agency shall deny and dismiss the request for an administrative determination of the existence or nonexistence of a parent and child relationship and inform the mother and the alleged father that *they may bring an action under sections 3111.01 to 3111.19 of the Revised Code to determine the existence of a parent and child relationship.*" (Emphasis added.) R.C. 3111.22(C)(6).

Moreover, there appears to be a conflict between R.C. 3111.22(A)(1) and (B) and R.C. 3111.04(D). While the provisions of R.C. 3111.22(A)(1) and (B) appear to be of broad application, R.C. 3111.04(D) states:

"A recipient of public assistance * * * shall request the child support enforcement agency of the county in which the child resides to make an administrative determination of the existence or nonexistence of a parent and child relationship between the father and the child pursuant to section 3111.22 of the Revised Code before the recipient commences an action to determine the existence or nonexistence of that parent and child relationship."

Considering that the provisions of R.C. Chapter 3111 are *in pari materia* and must be construed together, *State v. Reese* (Aug. 25, 1994), Cuyahoga App. Nos. 66322 and 66465, unreported (construing *Hulett v. Hulett* [1989], 45 Ohio St.3d 288, 544 N.E.2d 257), and in view of the "elementary rule of statutory construction that, in the absence of language to the contrary, a specific statute controls over a general provision," *Quality Ready Mix, Inc. v. Mamone* (1988), 35 Ohio St.3d 224, 226, 520 N.E.2d 193, 196, we do not believe that such a patent and unambiguous lack of subject matter jurisdiction is evident in this case to permit application of prohibition in the face of an extant legal remedy. Cf. *Horner v.*

*Dible* (June 30, 1994), Sandusky App. No. S–93–44, unreported, 1994 WL 319071 (juvenile court properly exercised jurisdiction over parentage action where plaintiff did not first request CSEA determination).

To reiterate, we do not determine here whether the juvenile court's pending exercise of jurisdiction is unauthorized by law. That issue must await another day. However, we do conclude that the court is not so patently and unambiguously devoid of subject matter jurisdiction that would permit us to issue a writ of prohibition while a final judgment is pending.

*Writ denied.*

GRADY and FREDERICK N. YOUNG, JJ., concur.